EXHIBIT A

| Fill in this information to identify the case: |
| --- |

Debtor 1   John Martin

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Eastern District of New York**

Case number:  **15–45600**

FILED

**U.S. Bankruptcy Court
Eastern District of New York**

4/25/2016

**Robert A. Gavin, Clerk**

## Official Form 410
## Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers **must** leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:**  Identify the Claim |
| --- |

**1. Who is the current creditor?**

Carrollton Trust UTD 011113

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Carrollton Trust UTD 011113

Name

c/o Gerald A. LeMoine, Trustee
13210 Harbor Blvd., #149
Garden Grove, CA 92843

Contact phone _____866–935–5211_____

Contact email
 _gerald@thelemoinegroup.com_

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**Where should payments to the creditor be sent? (if different)**

Name

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) ___1___   Filed on ___04/25/2016___
                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                         Proof of Claim                         page 1

**Part 2:**  Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

**7. How much is the claim?**   $   236746.71

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money loaned–(i) Judgment line on NY property; (ii) Mortgage obligation on NJ property–see attachments A & B

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.
   **Nature of property:**
   ☑ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☐ Other. Describe: _____

   **Basis for perfection:**    Judgment/Assign. of Mtg.

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**    $    1227000.00

   **Amount of the claim that is secured:**    $    33500.00

   **Amount of the claim that is unsecured:**    $    203246.71    (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**    $    236746.71

   **Annual Interest Rate** (when case was filed)    9.0    %
   ☑ Fixed
   ☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No ☐ Yes. *Check all that apply*: | | Amount entitled to priority |
|---|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ | |
| | | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ | |
| | | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ | |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ | |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ | |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ | |
| | | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    4/25/2016

MM / DD / YYYY

/s/  Gerald A. LeMoine

Signature

Print the name of the person who is completing and signing this claim:

Name    Gerald A. LeMoine

First name    Middle name    Last name

Title    Trustee for Carrollton Trust UTD 011113

Company    The LeMoine Group

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    13210 Harbor Blvd., #149

Number    Street

Garden Grove, CA 92843

City  State  ZIP Code

Contact phone    866–935–5211    Email    gerald@thelemoinegroup.com

<u>**Mortgage Proof of Claim Attachment**</u>

<u>**Mortgage and Case Information**</u>

Debtor:  John Martin

Case No. 15-45600

Creditor:  Carrollton Trust UTD 01113

Interest rate:  9.0%

**Total Debt Calculation as of Petition Date**
**Including Prepetition Arrearages**

Principal Balance: $215,880.55

Interest Due:  $20,866.16 (post-Judgment through Petition Date)

Total Debt: $236,746.71

<u>**Monthly Mortgage Payment**</u>

N/A

<u>**Loan Payment History from First Date of Default**</u>

N/A

Attachment "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

GERALD A. LEMOINE

                          Judgment Creditor,

        v.

JOHN MARTIN,

                          Judgment Debtor.

Index No. *16688/2014*

AFFIDAVIT OF JUDGMENT CREDITOR

FILED & RECORDED

NOV 17 2014

COUNTY CLERK
QUEENS COUNTY

ENTERED

*11:20* AM/PM

NOV 17 2014

COUNTY CLERK
COUNTY OF QUEENS

STATE OF NEW JERSEY    :
                       :    SS.
NEW CASTLE COUNTY      :

Gerald A. Lemoine, being duly sworn, hereby deposes and says:

1.    I am Trustee for Carrollton Trust UTD 011113, the judgment creditor in the above-captioned action ("Judgment Creditor" or "Trustee"), and I respectfully submit this Affidavit in connection with the order for summary judgment against the judgment debtor, John Martin ("Judgment Debtor").

2.    An exemplified copy of the Judgment, initially entered in the Superior Court of New Jersey Law Division, Bergen County (the "Court"), is annexed hereto as Exhibit "A." I am fully familiar with the facts and circumstances set forth herein.

3.    The name of the Judgment Creditor is Gerald A. Lemoine and his last known address is 13210 Harbor Blvd., #149, Garden Grove, California 92843.

4.    The within judgment was not obtained by default in appearance or by confession

of judgment.

5.    The name of the Judgment Debtor is John Martin and his last known address is

19120 109th Avenue, Saint Albans, New York 11412-1157.

6.    The judgment remains unsatisfied in whole.

7.    The unpaid amount of the judgment consists of $215,880.55 in principal, interest,

and late charges.

8.    The enforcement of the judgment has not been stayed.

9.    The judgment is a final determination of the court and can be executed upon by

any sheriff in the State of New Jersey.

Dated: November 5, 2014

_____
Gerald A. Lemoine
Trustee for Carrollton Trust UTD
011113

Sworn to before me on this
5th day, November, 2014.

_____
Notary Public

RONALD STEUBER
Comm. E 1922007
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
MY COMM. EXP. JAN. 29, 2016

DOCKET    Total amount to be docketed: $215,880.55

Audrey I. Pheffer
Clerk

DOCKETED
BY   eg

ACTIVE 27912004v1 11/03/2014

ENTERED
11:20 (AM) PM
NOV 17 2014
COUNTY CLERK
COUNTY OF QUEENS

FILED & RECORDED
NOV 17 2014
COUNTY CLERK
QUEENS COUNTY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| GERALD A. LEMOINE,<br>Judgment Creditor,<br><br>v.<br><br>JOHN MARTIN,<br>Judgment Debtor. | Index No. 16688/2014<br><br>AFFIDAVIT OF JUDGMENT CREDITOR |

FOX ROTHSCHILD LLP
ATTORNEYS FOR
JUDGMENT CREDITOR
100 PARK AVENUE, SUITE 1500
NEW YORK, NEW YORK 10017
TELEPHONE NO. 212-878-7900

FILED & RECORDED
NOV 17 2014
COUNTY CLERK
QUEENS COUNTY

ENTERED
11:20 AM PM
NOV 17 2014
COUNTY CLERK
COUNTY OF QUEENS

DOCKET

Queens County Clerk's Office
Paym 2259042 11/17/2014 11:19a
Cashier SGPALETA Register # 6

Tr.2735422 $210.00

Other
16688/2014 LEMOINE,GERALD A vs. M
ARTIN,JOHN

Total: $210.00

Check $210.00

# SUPERIOR COURT OF NEW JERSEY



I, MICHELLE M. SMITH, Clerk, Superior Court of New Jersey, the same being a Court of Record, do hereby certify that the foregoing **CERTIFICATION OF STATEWIDE JUDGMENT LIEN** is a true record of the judgment filed and recorded as a lien September 5, 2014 in the cause wherein GERALD A. LEMOINE is the Plaintiff and JOHN MARTIN is the Defendant, now on file in my office.

**IN TESTIMONY WHEREOF,** I have hereto set my hand and affixed the seal of said Court at Trenton, this 16th day of October, Two Thousand and Fourteen.

_____
Clerk

I, THOMAS W. SUMNERS, JR., Judge of the Superior Court of New Jersey, do hereby certify that Michelle M. Smith, whose name is subscribed to the above certificate was at that date thereof and now is the Clerk of the Superior Court of New Jersey, that the foregoing attestation is in proper form, that the seal thereto annexed is the seal of said court and that the signature of the said Michelle M. Smith is in her own proper handwriting.

**WITNESS** my hand at the City of Trenton, this 16th day of October, Two Thousand and Fourteen.

_____
Judge

NOTE--This certificate is made pursuant to an act of Congress (Title 28 U.S. Code, Sec. 1738 effective September 1, 1948)

PAGE 001 OF 001

SUPERIOR COURT OF NEW JERSEY
CIVIL JUDGMENT AND ORDER DOCKET

LEMOINE
    (PLAINTIFF(S))
        VS
MARTIN
    (DEFENDANT(S))

PROCESSING VENUE: BERGEN
DOCKET NO.      : BER L -001778-14
JUDGMENT NO.    : J -166320-14

DEBT NO.      : 001 OF 001

CERTIFICATION OF STATEWIDE JUDGMENT LIEN

IN FAVOR OF:                          AGAINST:

LEMOINE        GERALD    A            JOHN MARTIN

CREDITOR CONTACT:
FOX ROTHSCHILD  LLP
609-348-4515

JUDGMENT AMOUNT(*)          $215,880.55      DATE OF JUDGMENT ENTRY:    08/11/2014

COSTS & ATTORNEY FEES              0.00      DATE STATEWIDE JUDGMENT
                                             LIEN RECORDED:            09/05/2014
TOTAL                       $215,880.55
                                             STATEWIDE JUDGMENT LIEN STATUS: OPEN

(*)INCLUDES PRE-JUDGMENT INTEREST(IF ANY)

DEBT AMOUNT:                $215,880.55      DEBT STATUS:                      OPEN

STATUS OF DEBT AS TO: JOHN MARTIN            OPEN

COMMENTS :

I HEREBY CERTIFY THAT THE FOREGOING REFLECTS THE JUDGMENT AND COSTS OF RECORD IN THIS
COURT. ADJUSTMENTS AFTER THE DATE OF THE JUDGMENT, SUCH AS INTEREST OR CREDITS, MAY
NOT BE INCLUDED IN THE TOTALS. PLEASE CONTACT THE CREDITOR OR CREDITOR'S ATTORNEY
FOR THE CURRENT TOTAL AMOUNT DUE, IF ANY.

Michelle M. Smith, Esq.
Clerk of Superior Court

CLERK OR DEPUTY CLERK OF SUPERIOR COURT

DATE: 09/09/2014

RECORDED AS A LIEN    SEP 05 2014

FILED

AUG 11 2014

RACHELLE L. HARZ
J.S.C.

FOX ROTHSCHILD LLP
formed in the Commonwealth of Pennsylvania
By: Christopher C. Fallon, III, Esquire (026402006)
Midtown Building, Suite 400
1301 Atlantic Avenue
Atlantic City, New Jersey 08401
609-348-4515 (FAX: 609-348-6834)
Attorneys for Plaintiff

GERALD A. LEMOINE, AS TRUSTEE FOR
CARROLLTON TRUST UTD 011113,

                                                     Plaintiff,

v.

JOHN MARTIN,

                                                     Defendant.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION
BERGEN COUNTY

DOCKET NO. BER-L-1778-14

CIVIL ACTION

ORDER FOR SUMMARY
JUDGMENT AGAINST
DEFENDANT, JOHN MARTIN

J166320-14

THIS MATTER, having been brought before the Court on a Motion filed by

Plaintiff, Gerald A. Lemoine, as Trustee for Carrollton Trust UTD 011113, by and

through his counsel, Fox Rothschild LLP, for Summary Judgment; and the Court, having

considered the papers submitted in support hereof and any opposition thereto; for the

reasons set forth on the record; and other good cause shown, IT IS on this 11ᵗʰ day of

August, 2014, ORDERED as follows:

    1.    Judgment is hereby entered in favor of Plaintiff, Gerald A. Lemoine, as

Trustee for Carrollton Trust UTD 011113, and against Defendant, John Martin, for:

    (a)    principal, interest, and late charges, as of the date of the entry of the within

Order in the total amount of $215,880.55, together with lawful interest thereafter until the

same be paid and satisfied.

(b)    attorney's fees as of the date of the entry of the within Order in the amount

of $ _____ plus costs of $ _____, together with lawful

interest thereafter until the same be paid and satisfied.

2.    Plaintiff's counsel shall serve a copy of this Order upon all counsel of

record within seven (7) days of receipt hereof.

*Rachelle L. Harz*

Hon. Rachelle L. Harz, J.S.C.

*no opposition*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

GERALD A. LEMOINE,

                          Judgment Creditor,                    Index No. 16688/2014

              v.                                                 NOTICE OF FILING JUDGMENT

JOHN MARTIN,

                          Judgment Debtor.

To: JOHN MARTIN, judgment debtor, residing at 19120 109th Avenue, Saint Albans, New

York 11412-1157.

          PLEASE TAKE NOTICE that on the 17th day of November, 2014, a duly authenticated

copy of the judgment filed and entered in the Superior Court of New Jersey, Bergen County on

the 5th day of September, 2014, was duly filed in the office of the Clerk of Queens County, New

York, pursuant to the provisions of CPLR 5402.

Dated: New York, New York
          November 24, 2014

                              Respectfully submitted,

                              FOX ROTHSCHILD LLP

                              By:
                              Daniel A. Schnapp, Esq.
                              Attorney for Judgment Creditor
                              100 Park Avenue, 15th Fl.
                              New York, NY 10017
                              212-878-7900

Gerald Lemoine                                                  Martin Demand Calc HELOC gt 08 08 14

Payoff Calcs Interest Only

## 2nd Lien HELOC

| Borrower | |
|---|---|
| Borrower | John Martin |
| Loan No | 200154 |
| Good Through Date | 8/8/2014 |

| Interest Factors | | |
|---|---|---|
| Principle Unpaid Balance | $ | 186,923.05 |
| Interest Rate | | 3.250% |
| Interest Cost per Year | $ | 6,075.00 |
| Days/Year | | 365 |
| Interest per Day | $ | 16.64 |

| Deliquency Dates | | |
|---|---|---|
| Start date | | 4/11/2010 |
| End date | | 8/8/2014 |
| Days of interest | | 1,580 |
| Interest/Day | $ | 16.64 |
| Total Int. to Date | $ | 26,297.26 |
| Months Late | | 52.00 |

| Notes |
|---|
| Borrower 1: John C Martin |
| Borrower 2: |
| SSN 1: ▓▓▓-3399 |
| SSN 2: |
| |
| Property Address: |
| 229 10th St Palisades Park, NJ 07650 |

| Interest & Late Charge Calcs | | |
|---|---|---|
| Monthly Int Only Pmt | $ | 506.25 |
| Late Charge Rate | | 10% |
| Minimum Late Charge | $ | 40.00 |
| Calc % Late Charge | $ | 50.62 |
| | | |
| Monthly Late Charge | | 50.62 |
| Months | | 52 |
| Total late charges | $ | 2,632.50 |
| | | |
| Payoff calc | | |
| Current Principle Bal | $ | 186,923.05 |
| Back Interest Pmts | $ | 26,325.00 |
| Late charges | $ | 2,632.50 |
| BK atty | $ | - |
| FC atty | $ | - |
| Prop Txs | $ | - |
| Preservation | $ | - |
| Total Advances | $ | - |
| Less suspense bal | $ | - |

| Demand Summary | | |
|---|---|---|
| Total Payoff | $ | 215,880.55 |
| | | |
| Total Past Due | $ | 28,957.50 |

| Last payment | 3/11/2010 |
|---|---|
| Last PMT Amt | $ | 5,041.00 |

Attachment "B"

#21

1
—
43

13-078260    Assignment of Mortgage
V BK: 01458 Pg: 0921-0921    Rec. Fee $43.00
John S. Hogan, Bergen County Clerk
Recorded 07/17/2013  03:44:44 PM

Prepared By: Eileen M. Kovach
PNC Bank National Association, successor by merger to National City Bank
6750 Miller Road,
Breeksville, OH 44141

When Recorded Return To:
Richmond Monroe Group
PO Box 458
Kimberling City, MO 65686

4418929
Ref #xxxxx8120622081
PNC ID # 2825

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, PNC Bank National Association, successor by merger to National City Bank, 6750 Miller Road Breeksville, OH 44141 ("Assignor") hereby assigns and transfers to _The Lemoine Group, Inc._ ("Assignee"), without recourse, representation, warranty or guaranty, express or implied, of any kind or nature, all of Assignor's rights, title and interest in and to that certain Mortgage or Deed of Trust:

Executed by: JOHN MARTIN
Recorded on: 3/24/2005
In the Recorder's Office of: Bergen County
Property Address: 229 10TH STREET, PALISADES PARK, NJ  07650
Instrument #: N/A          Book: 14228          Page(s): 173

Date:  May 11, 2013
PNC Bank National Association, successor by merger to National City Bank
Signature: _Eileen M Kovach_
Eileen M. Kovach, Assistant Vice President

## ACKNOWLEDGMENT

STATE OF OHIO              )
                          ) SS:
COUNTY OF CUYAHOGA         )

The foregoing instrument was acknowledged before me this 11th day of May, 2013, by Eileen M. Kovach, Assistant Vice President of PNC Bank, National Association, a national banking association, on behalf of PNC Bank, National Association.

_Kelly Vrzic_
Notary Public

11/27/17

My Commission expires:

Kelly Vrzic, Notary Public
Residence - Cuyahoga
State Wide Jurisdiction, Ohio
My Commission Expires 11/27/2017



Recording Requested By:

When Recorded Return To:

RICHMOND MONROE
P.O. BOX 458
KIMBERLING CITY, MO 65686

## CORPORATE ASSIGNMENT OF MORTGAGE

Bergen, New Jersey    REFERENCE #: 4489290120622081    "MARTIN"
INVESTOR #:
Assignment Prepared on: August 9th, 2013.

Assignor: THE LEMOINE GROUP, INC. at 13210 HARBOR BLVD #149, GARDEN GROVE, CA  92843.
Assignee: CARROLLTON TRUST UTD 011113, GERALD A LEMOINE, TRUSTEE  at  13210 HARBOR
BLVD #149, GARDEN GROVE, CA  02843.

Executed By: JOHN MARTIN  To: NATIONAL CITY BANK
Date of Mortgage: 02/09/2005 Recorded:  03/24/2005  in Book/Reel/Liber: 14228 Page/Folio: 179 as
Instrument No.: 36733.01  in Bergen County , State of New Jersey.

Property Address:  229 10TH STREET, PALISADES PARK, NJ 07650

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths
DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $310,000.00 with interest, secured
thereby, together with all moneys now owing or that may hereafter become due or owing in respect
thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest
under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee
forever, subject to the terms contained in said Mortgage.

THE LEMOINE GROUP, INC.
On  08/14/13

By: _____
GERALD A. LEMOINE, President

STATE OF CALIFORNIA
COUNTY OF ORANGE

On  08/14/13 , before me, RONALD STEUBER, a Notary Public, personally appeared GERALD
A. LEMOINE, President,  who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal,

_____
RONALD STEUBER
Notary Expires:

RONALD STEUBER
Comm. # 1922007
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Exp. Jan. 20, 2015
*(This area for notarial seal)

This instrument was prepared by  JOANN Kennedy, National City Bank
                  155 Passaic Ave., Fairfield NJ 07006

        RETURN TO:
        NCB, CLS BRECKSVILLE
        LOCS, LOCATOR 7120
        P.O. BOX 5570
        CLEVELAND, OH 44101
        State of New Jersey ————————————— Space Above This Line For Recording Data —————————

# MORTGAGE
(With Future Advance Clause)

1.  DATE AND PARTIES. The date of this Mortgage (Security Instrument) is .. February 9, 2005 ............... and the
    parties, their addresses and tax identification numbers, if required, are as follows:

    MORTGAGOR: JOHN MARTIN
               229 10TH ST, PALISADES PARK, New Jersey, 07650

    ☐ If checked, refer to the attached Addendum incorporated in this Security Instrument, for additional Mortgagors, their
      signatures and acknowledgments.

    LENDER: NATIONAL CITY BANK                          36733.01   Mortgage
            Locator #7116                               Kathleen A. Donovan Recording Fee 70.00
            P.O. Box 5570                               Bergen County Clerk
            Cleveland, OH 44101                         Recorded 03/24/2005 11:20

2.  CONVEYANCE. For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure
    the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains,
    conveys and mortgages to Lender the following described property:

    SEE ATTACHED LEGAL DESCRIPTION



MARTIN
MORTGAGEDEED

448920041200620061  XBAK83N

The property is located in .. Bergen .......................... at ...................................................
                              (County)
229 10TH STREET                          PALISADES PARK                .., New Jersey    07650
    (Address)                               (City)                                       (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights,
ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at
any time in the future, be part of the real estate described above (all referred to as "Property").

3.  MAXIMUM OBLIGATION LIMIT. The total principal amount secured by this Security Instrument at any one time shall not
    exceed $ ........ 110,000.00 ............... . This limitation of amount does not include interest and other fees and
    charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the
    terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security
    Instrument.

4.  SECURED DEBT AND FUTURE ADVANCES. The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described
       below and all their extensions, renewals, modifications or substitutions. (When referencing the debts below it is
       suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)

                                              Maturity Date: 2/09/2025



## National City

**EQUITY RESERVE℠ AGREEMENT - NATIONAL HOME EQUITY**
(Not to be Used for Lines Secured by a Texas Homestead)

Date: 2/09/2005    Account No.: 0003036691

You, the undersigned, are opening an Equity Reserve Line of Credit (Line) with National City Bank (Bank) and agree that the following terms and conditions will apply to your Line.

**Line of Credit.** Your Line is an open-end line of credit which you may use to obtain cash advances (Advances) from time to time for a period of 10 years (Draw Period). If you continue to meet Bank's then current credit and collateral value criteria, at Bank's discretion, Bank will extend the Draw Period for one or more additional Draw Periods or Bank may refinance your Line on the terms then being offered by Bank for Equity Reserve Lines of Credit. If your Draw Period is not renewed or the Line is not refinanced, you may repay any outstanding balance during the Repayment Period as provided in the Payment section below. The initial amount of your Line is $ 310,000.00 (Credit Line). You have the option anytime during the Draw Period of this Agreement to create Fixed Rate Partitions of all or part of your Line at a fixed rate and for a fixed payment. The Fixed Rate Partition (FRP) feature includes the partition advance fee. Any amount you repay on your Line and/or on an FRP will be again available to you on the Line until the end of the Draw Period. Bank may reduce the amount of your Credit Line under certain conditions described in this Agreement.

**Advances.** You may obtain Advances under your Line by Equity Reserve checks and special FRP checks (Checks) supplied by Bank, or by any of any other Bank approved plan. Bank will charge your Checks directly against your Line. You may make arrangements for an Advance on your Line to pay off any FRP at any time by contacting Customer Service at the address or phone number on your statement. You should notify Bank when you need more Checks. The minimum FRP Advance that you can receive using an FRP Check is $5,000. FRP checks for less than $5,000 will be charged against your Line. You should also notify Bank immediately if your Checks are lost or stolen. (Please see the "Stop Payment Orders" section of this Agreement). Your statement will show the actual paid Checks will not be returned to you. You may request copies of paid Checks from the Bank, and a copying fee may be charged.

Bank may issue you a Card or Cards for use with the Line. Credit card access is not offered in Connecticut, New York and Texas and thus is not offered in other states. The word Card can mean one or more credit cards or Automated Teller Machine (ATM) cards. You authorize Bank to issue you a Card for use with the Line. You may purchase goods or services from merchants who honor the Card. You may obtain Advances from Bank or any other financial institution that honors the Card. You may also obtain Advances by using a Personal Identification Number (PIN) for telephone banking or on-line banking Advances. Bank will charge all Advances to your Line. If you allow someone else to use your Card or PIN and you want to stop such use, you must let Bank know in writing. If he or she has a Card or PIN, you must return the Card with your written notice and/or request a new PIN. You must notify Bank immediately if your Cards or PIN are lost or stolen, or if you believe that some person may be using your Card(s) or PIN without permission. You will not use your Line after notifying Bank of loss, theft or unauthorized use of your Card(s) or PIN. You will not be held liable for any unauthorized use of the Card or PIN after you have notified Bank of the loss or theft by telephone at 1-800-333-6500 or in writing at National City Card Services, P.O. Box 4092, Kalamazoo, Michigan 49003 (Otherwise you may be liable, but not for more than $50.) Bank may terminate the use of your Card or PIN if you lose your balance exceeds your Credit Line by 1% or if you are over limit for more than one twelve month period. Bank may also terminate the use of your Card or PIN if your account balance exceeds your Credit Line by 1% or if you are over limit for more than one billing cycle.

Bank will have no obligation to honor any Advance by any means if the resulting new balance of your Line would exceed your Credit Line, or after the Draw Period ends, or in the event of termination or suspension of your Credit Line under the conditions described in this Agreement, and upon Bank's request you will return Checks and/or Cards. Your Line may not be used for Internet lottery, betting or gambling transactions or for any illegal transactions. Charges from foreign merchants and financial institutions may be made in a foreign currency. We will bill you in U.S. Dollars based on the exchange rate on the day we settle the transaction, plus any special currency exchange charges, in the case of VISA Accounts. The exchange rate applied to such transactions is a (A) wholesale market rate or (B) government-mandated rate, in effect one day prior to the processing date, increased by one percent. Because of the special charges and possible differences in exchange rates between the time we settle and the time you initiated the transaction, the total charge for a foreign transaction may be greater than the cash advance or purchase at the time it was made.

**Finance Charge for Line and Fixed Rate Partition Advances and During the Repayment Period.**

a) Line Advances. Bank figures the finance charge on your Line by applying the periodic rate to the "average daily balance" of your Line. To get the "average daily balance", Bank takes the beginning balance of the Line each day, adds any new Advances including if applicable, the broker and processing fees, and other debits, and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance" for the billing cycle. The periodic rate of finance charge and the annual Advances are subject to finance charges from the date of transaction to the date payment is posted to the Line. The periodic rate of finance charge and the annual percentage rate are subject to change, based on the value of an index. The index in effect for each billing cycle shall be the "Prime Rate" of interest appearing in the Money Rates Table of The Wall Street Journal published on the first day of your billing cycle (or, if not published on that date, the last edition published prior to that date), rounded upward, if necessary, to the nearest .01% (Line Index).

The ANNUAL PERCENTAGE RATE is the Line Index plus 0.000 %. The FINANCE CHARGE for each billing cycle shall be computed at the annual percentage rate divided by 12. The current periodic rate of FINANCE CHARGE is 0.458 % per month, which corresponds to an ANNUAL PERCENTAGE RATE of 5.500 %. The annual percentage rate and the periodic rate of finance charge may increase if the Line Index increases. In the event of an increase, the finance charge will increase and the minimum payment amount may increase. An increase or decrease in the annual percentage rate will result in a corresponding increase or decrease in the minimum payment amount.

b) Fixed Rate Partition Advances. Bank figures the finance charge on each FRP by applying the periodic rate to the "average daily balance" of the FRP. To get the "average daily balance", Bank takes the beginning balance of the FRP each day and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance". Each FRP is subject to finance charges from the date of the transaction until paid in full. The periodic rate of finance charge and the annual percentage rate are determined and fixed on the business day the transaction posts to your Line. The index shall be the daily rate for 3 year Treasury notes with constant maturity for the 10th business day prior to the last business day of the calendar month preceding the month in which the transaction posts to your Line, rounded upward if necessary, to the nearest .01% (FRP Index). The FRP Index can be found in the Federal Reserve Statistical Release H.15 at www.federalreserve.gov/releases/h15.

The ANNUAL PERCENTAGE RATE is the FRP Index plus 3.750 %. The FINANCE CHARGE for each billing cycle shall be computed at the annual percentage rate divided by 12. The current periodic rate of FINANCE CHARGE is 0.597 % per month, which corresponds to an ANNUAL PERCENTAGE RATE of 7.160 %.

c) Both Line and Fixed Rate Partition Advances. In no event shall the periodic rate of FINANCE CHARGE be more than 1.50% per month or less than 0.25% per month and in no event shall the ANNUAL PERCENTAGE RATE be more than 18.0% or less than 3.0%. The annual percentage rate includes only interest and no other costs. Your monthly statement will disclose the applicable annual percentage rate for the billing cycle.

d) Repayment Period. Any outstanding Line balance and Other Charges will be converted to a Fixed Rate Partition (whose terms on the last business day of your Draw Period and will be subject to finance charges for a Fixed Rate Partition as stated in subsections (b) and (c) above. The index value in business day of your Draw Period and will be subject to finance charges for a Fixed Rate Partition as stated in subsections (b) and (c) above. The index value is the FRP Index on the 10th business day prior to the last business day of the calendar month preceding the month in which the Draw Period ends rounded as provided in subsection (b) above.

**Other Finance Charges.**
A broker fee FINANCE CHARGE of $ 0.00
A processing fee FINANCE CHARGE of $ 0.00
A Partition Advance fee FINANCE CHARGE of $30 for each Fixed Rate Partition used

NHEAGMT1 (07/04)



ERA-MX.16-V1_1

**Other Charges**  In addition to finance charges, the following other charges will apply:

- An annual fee of $50 reflected on the monthly statement for the first billing cycle of each year of your Draw Period beginning with the 13th billing cycle, whether or not you obtain Advances under your Line.  This fee is not refundable
- A late payment fee of the greater of 10% of the unpaid minimum payment or $40, if Bank does not receive your minimum payment at the address shown on your statement within 10 days of the Due Date.  Bank may charge an additional late payment fee for each billing cycle that your Line is past due.
- An over limit fee of $25 whenever you go over your Credit Line.  Bank may charge an additional $25 for each billing cycle that you remain over your Credit Line.
- A returned payment fee of $35 if you make a payment on your Line which is returned to Bank unpaid because of insufficient funds, a closed account, stop payment, or any other reason.
- A returned check fee of $25 if you write a Check that Bank dishonors under the "Advances" section of this Agreement.
- A stop payment fee of $25 for the service of stopping payment on a Check and a $25 service fee for renewal of each stop payment order
- A document request fee of $5 per copy for service of providing copies. Bank will not charge you for documents Bank is required to give you by law
- Any real estate related closing fees due at the closing of your Line are reflected on the HUD1 settlement statement provided to you by the closing agent and which is hereby incorporated and made part of this Agreement by this reference.

Bank does not lose any of its other rights under this Agreement whether or not it charges late payment or over limit fees.  The application of any fee shall not cure the default which initiated the fee

**Security Interests**  Your Line will be secured by a mortgage (Mortgage) on your dwelling (Dwelling)  If the Dwelling is your primary or secondary residence, you represent and warrant to Bank that at all times during the term of this Agreement your Dwelling, or a minimum of one unit of your multi-unit Dwelling, shall be occupied by you and shall not be used as rental property.  Bank agrees to waive any security interest in the Dwelling to the extent it secures Advances which may be in excess of your Credit Line.  You name Bank as loss payee and beneficiary of the proceeds of, and assign to Bank any uncarned premiums of, all insurance connected with your Line.  You must not adversely affect Bank's interest in the Dwelling by any action or inaction.  You must keep the Dwelling in good condition, promptly pay all assessments and other liens against the Dwelling, and promptly pay all taxes and assessments on the Dwelling.  You must not sell or transfer title to the Dwelling without Bank's permission, or use the Dwelling for any illegal purpose.

**Property Insurance.**  You must keep the Dwelling fully insured against loss or damage on terms which are acceptable to Bank to the extent permitted by law  You must carry flood insurance if required by federal law  You may obtain property insurance or furnish existing property insurance from anyone that is acceptable to Bank provided the insurer is authorized to do business in the state or jurisdiction where the Dwelling is located or is an eligible surplus lines carrier.  You agree to furnish Bank with evidence of such insurance, with Bank named as loss payee and proof of payment of insurance premiums.  If you fail to do so, Bank may buy insurance to protect Bank's interest and add the premium cost to the unpaid balance of your Line, subject to the same finance charges as Advances against your Line.  You assign to Bank the proceeds from any such insurance policies up to the unpaid balance of your Line.  Bank may apply such proceeds, including any return of unearned premiums and payments for claims under such policies, to reduce the unpaid balance of your Line.  You irrevocably authorize Bank as your agent and on your behalf to negotiate, settle and release any claim under your insurance and to submit insurance claims for you and to receive and sign your name to any checks or drafts or related papers obtained from insurance companies.

**Tax Deductibility**  You should consult a tax advisor regarding the deductibility of interest and charges on your Line

**Statements.**  Bank agrees to mail or deliver to you a monthly statement for each billing cycle at the end of which there is a balance which is a debit or credit balance of more than $1 or on which a finance charge has been imposed.  The balance is the sum of all outstanding Advances(s), fees, payments, other credits, other charges and debits, and finance charge(s)

**Payments.**  Your payments will be due monthly  You may pay the entire unpaid balance of your Line and/or your FRP(s) at any time  You are required to pay a minimum payment by the Due Date shown on your statement equal to the sum of the Line Minimum Payment and the FRP Minimum Payment for each FRP in use

a) **Line Minimum Payment:**  The Line Minimum Payment will equal the periodic finance charges that accrued on the outstanding Line balance during the preceding billing cycle as shown on each monthly statement (Interest Only Minimum Payment)

b) **The FRP Minimum Payment is:**  A fixed payment amount that is sufficient to pay off the Portion Advance Fee, the balance and periodic finance charges for each FRP, if one hundred twenty (120) equal payments at the fixed rate applicable to that FRP were made.  Any amount still owing after one hundred nineteen (119) billing cycles will be added to the final minimum payment due  Additional payments on any FRP may be made at any time but you will continue to be obligated to make the fixed payment for the FRP as long as any amount is still owing on the FRP.  The amount of any reduction in principal from a payment on an FRP will become available to you on your Line once it is posted, until the end of the Draw Period.  If your Draw Period is not renewed then access to the Line will not be available during the Repayment Period.

c) **Repayment Period:**  The Minimum Payment you will fully repay the principal that is outstanding by the end of the Draw Period  If your Draw Period is not renewed for an additional term, during the Repayment Period you may continue to make scheduled payments on any Fixed Rate Portion balances outstanding at the end of the Draw Period until they are paid in full.  Additionally, any outstanding line balance and Fixed Rate Portion will be converted to a Fixed Rate Portion balance without a Portion Advance Fee on the last business day of your Draw Period and will be subject to finance charges for a Fixed Rate Portion, and will be required to be repaid in one hundred twenty (120) equal monthly payments for balances of $5,000 or more; or sixty (60) equal monthly payments for balances of less than $5,000  Any amount still owing after one hundred nineteen (119) billing cycles or after fifty nine (59) billing cycles respectively, will be added to the final minimum payment due

Payments will be applied in the following order:  First, to each FRP on a first in-first out basis for all unpaid periodic finance charges and then to the FRP's principal balance in an amount necessary to amortize the FRP within its amortization schedule, then to all unpaid periodic finance charges on the Line, then to all Other Charges, then to the Line  This introductory and promotional offer balances, payments to the Line are applied on the basis of the lowest rate balance first to highest rate balance first.  If there are no balances on the Line, overpayments are applied as a prepayment to the FRP(s) on a first in-first out basis.  If there are no balances on any FRP or on the Line, overpayments are credited to the Line and returned upon request.  In order to make additional partial prepayments to an FRP or to prepay an FRP in full without paying off your Line, you must contact Customer Service to make arrangements to do so.

**Stop Payment Orders.**  We agree to honor a stop payment order against a Check when received from you within a reasonable time prior to payment.  A stop payment order becomes effective after we have actually received the order and had a reasonable time to process it, and the order will remain in effect for thirteen months.  Our acceptance of a stop payment order does not mean that the Check has not yet been paid, and we shall have no liability resulting from the payment of a Check before your stop payment order becomes effective.  A stop payment order may be renewed for successive periods equal to its original period of effectiveness if we receive a renewal notice prior to the order becoming ineffective

A stop payment order against a Check must accurately describe it as to date, number, amount, and payee, and must correctly recite your name and the Account number  You agree that it is current industry standard to process stop payment orders by means of computer technology  Accordingly, your failure to provide the exact identification of Account number and Check number in order to identify the Check to be stopped will result in the Check being paid if presented, and we will not be liable for such payment.  Errors in your name or the Account number, or inaccuracies in the Check amount, or inaccuracies of the number, amount, or date of payment on your written stop payment order that relieve us from any liability for any mistaken payment or wrongful dishonor.  Any errors do not without acknowledgment to you of a stop payment order, must be reported by you in writing to our Customer Service Department within 10 calendar days of the written acknowledgment date.  We shall not be liable for any mistaken payment or wrongful dishonor occurring after the 10-day period, unless errors or inaccuracies are so reported to us within the 10-day period.

Before we will honor a stop payment order, our Customer Service Department may require the receipt of a written request, signed by you, requesting the withdrawal of the order

In the event we re-credit the Account for a paid Check, then you hereby assign to us all rights against third parties.  You or any joint account holder may order a stop payment.  You agree that we will not be obligated to reimburse you immediately upon notice of alleged wrongful payment, that it is your obligation to prove the fact and amount of damage suffered; and that in no case will we be liable for more than your actual damage.

NHHAGMT2 (07/04)



ERA-MULTI-V1_2

We shall not be liable for any damages unless we have failed to act in good faith and exercise ordinary care. You agree to indemnify us and hold us harmless from any and all expenses incurred or damages suffered by us in honoring a stop payment order.

To place a stop payment order, write to National City, Equity Reserve Stop Payment Department, 4661 E. Main Street, Columbus, Ohio 43251-0928

**Termination of Line.** Bank can terminate your Line and require you to pay the entire outstanding balance in one payment if you breach a material obligation of this Agreement in that:
- You engage in fraud or material misrepresentation in connection with your Line
- You do not meet the repayment terms of this Agreement.
- Your action or inaction adversely affects the collateral or Bank's rights in the collateral

To the extent permitted by 11 USC 506, Bank shall be entitled to reasonable court costs and attorneys' fees for independent counsel that Bank hires (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you). Interest after termination, whether prior to or after judgment by a court of competent jurisdiction, shall accrue upon the outstanding unpaid balance at the rate determined under this Agreement until such balance is paid in full

**Suspension or Reduction of Credit Line.** Bank can refuse to make additional extensions of credit or reduce your Line if you breach a material obligation of this Agreement in that:
- The value of the Dwelling securing your Line declines significantly below its present appraised value for purposes of the Credit Line.
- Bank reasonably believes you will not be able to meet the repayment requirements due to a material change in your financial circumstances.
- You are in default of a material obligation under this Agreement.
- Government action prevents the Bank from imposing the annual percentage rate provided for or impairs the Bank's security interest such that the value of the interest is less than 120 percent of the Credit Line.
- A regulatory agency has notified the Bank that continued Advances would constitute an unsafe or unsound practice
- The maximum annual percentage rate is reached.

If your Line is suspended and you have used any FRP(s) then at Bank's option Bank may terminate the FRP(s) and transfer any FRP balances to your Line. Bank will give you written notice of any such action and conditions for eliminating your credit privileges. Bank may reinstate your credit privileges when the conditions leading to suspension is cured to Bank's satisfaction. Bank may require you to request reinstatement of credit privileges when the conditions leading to suspension or reduction of your Credit Line no longer exist. An additional title examination and other documentation may be required to reinstate your Line, and any costs associated with reinstatement will be paid by you where permitted by law

**Change in Terms.** Bank may change certain terms of this Agreement at any time by giving you 15 days prior notice:
- The index and margin used for this Line if the original index is no longer available.
- A change that you specifically agree to.
- A change that benefits you.
- An insignificant change.
- Other changes permitted by applicable law

Any change in terms will apply to balances outstanding on the effective date of the change as well as to balances generated thereafter

**Other Provisions.** You shall promptly notify Bank of any change in circumstances which has a substantial adverse effect on your credit. You will furnish Bank with financial statements in a form satisfactory to Bank as Bank may request from time to time. Bank may also require a title examination and/or appraisal from time to time, the cost of which will be paid by you where permitted by law

If this Agreement is signed by more than one borrower, each of you may draw Checks on the Line or use the Cards, and each and every borrower is jointly and severally liable for all Advances and charges on the Line. Any of you may direct Bank to not make further Advances on the Line, however, reinstatement will only be made on the joint request of all of you

Your rights in your Line may not be assigned. The Mortgage may not be assumed by a subsequent purchaser of the Dwelling. All fees paid to Bank are not refundable.

All of Bank's rights under this Agreement are valid to the extent permitted by applicable law. If it is determined for any reason that any part of this Agreement is invalid or unenforceable, this shall not affect the validity or enforcement of any other provision, and this Agreement will then read as if the invalid or unenforceable part were not there.

Bank may delay exercising any of its rights under this Agreement without losing them. We may accept late payments or partial payments without losing any of our rights. If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No. 7197. If your payment is made to any other address, we may accept the payment without losing any of our rights.

You understand that Bank is a national bank located in Ohio, and that Bank's decision to extend the Line to you was made in Ohio. Therefore, this Agreement and your use of the Line, Credit Line, and Checks, shall be governed by and construed in accordance with (a) Federal laws and regulations including but not limited to 12 USC § 85 and (b) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and without regard to conflict of law principles.

The annual IRS Form 1098 will be issued only to the first borrower listed on this Agreement at origination and the designation of a borrower as first cannot be changed subsequently

An electronic or optically imaged reproduction of this Agreement or any other document related to your Loan constitutes an original document and may be relied on in full by all parties to the same extent as an original.

You can change any term of this Agreement only in a writing signed by us

From time to time, we may offer you special rates for balance transfer transactions or introductory or promotional offers on your Line. If we do, we will advise you of the annual percentage rate and finance charge associated with the special rate offer, how long they will be in effect, the balances to which they will apply, and other terms of the special rate offer. Any special rate offer will be subject to the terms of the offer and this Agreement.

Except as otherwise prohibited by law, Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you for the purposes, among other things, of evaluating credit applications or offering products and services that National City believes may be of interest to you. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 5059, Kalamazoo, MI 49003. You must include your name, address, Line (account) number and social security number

You agree that you and Bank have an established business relationship, and unless otherwise prohibited by law, that National City may contact you to offer you products and services that National City thinks may be of interest to you. Such contacts are not unsolicited, and National City may contact you with automated dialing and announcing device or by fax, email or other form of electronic communication and we may monitor telephone calls with you to assure quality service

In this Agreement, the term "affiliates" means current and future affiliates of Bank, including, but not limited to, the following National City Corporation subsidiaries: National City Bank of Indiana, National City Bank of Michigan/Illinois, National City Bank of Pennsylvania, National City Bank of Southern Indiana, National City Home Loan Services, Inc., First Franklin Financial Corporation, National City Bank of Kentucky, Madison Bank and Trust Company, National City Mortgage Co. and National City Mortgage Services Co

NHEAQMT3 (07/04)

ERA-MULTI-V1_3

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer (credit) reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported an any report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113

NOTICES. The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated.

If the Dwelling is located in California: Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property

If the Dwelling is located in Colorado: If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

If the dwelling is located in Connecticut. Your initial Draw Period will be 9 years 10 months and cannot be renewed for additional draw periods.

If the Dwelling is located in Florida. FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT REQUIRED BY LAW HAS BEEN PAID OR WILL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE, AND FLORIDA DOCUMENTARY STAMPS HAVE BEEN PLACED ON THE TAXABLE INSTRUMENTS AS REQUIRED BY CHAPTER 201, FLORIDA STATUTES

If the Dwelling is located in Maryland. We elect Subtitle 9, Credit Grantor Open End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland

If the Dwelling is located in Minnesota: If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01

If the Dwelling is located in Missouri: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Dwelling is located in New York: YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

If the Dwelling is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

If the dwelling is located in Oregon. NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement may provide for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Dwelling is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Dwelling is located in Vermont: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU

COPY RECEIVED. You agree to be legally bound to all provisions of this Agreement. You acknowledge receipt of a completed copy of this Agreement, including important information below regarding your rights to dispute billing errors ("Your Billing Rights")

| JOHN MARTIN | X _____ |
| TYPE OR PRINT NAME | SIGNATURE |
| _____ | X _____ |
| TYPE OR PRINT NAME | SIGNATURE |
| _____ | X _____ |
| TYPE OR PRINT NAME | SIGNATURE |
| _____ | X _____ |
| TYPE OR PRINT NAME | SIGNATURE |

Address of Dwelling _____ 229 10TH STREET, PALISADES PARK , New Jersey 07650

NHEACMT4 (07/04)

ERA-MULTIV1_4

### YOUR BILLING RIGHTS – KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information.

* Your name and Line number
* The dollar amount of the suspected error
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with your Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)     You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b)     The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

©2004 National City Corporation

NHEAOMTS (07/04)                                                                                    ERA-MULTI-V1_5